UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| KENNESHEA ALLUMS, | ) | |
| --- | --- | --- |
| Plaintiff | ) ) ) | |
| v: | ) | Case No. 3:25-cv-00577 |
| LAMBDA LEGAL DEFENSE & EDUCATION FUND, INC., CRYSTAL COSTELLO, in their individual capacity, PAUL CASTILLO, in his individual capacity, JENNIFER C. PIZER, in her individual capacity, JOHN ROANE, in his individual capacity, | ) ) ) ) ) ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

### Plaintiff's Amended Complaint

Plaintiff, Kenneshea Allums, appearing pro se, hereby alleges as follows:

I. **INTRODUCTION**

1. This is an action for violations of the Connecticut Family Medical Leave Act ("CFMLA"), negligent infliction of emotional distress ("NIED"), intentional infliction of emotional distress ("IIED"), and negligent supervision arising from Defendants' unlawful employment practices, including wrongful denial of medical leave and retaliation. Plaintiff was employed by Defendant Lambda Legal from October 30, 2023, until her termination on April 19, 2024. During this time, Plaintiff requested accommodations for anxiety, sought and was eligible for medical leave under the CFMLA, and engaged in protected activities opposing discrimination and retaliation.

II. **JURISDICTION AND VENUE**

2. This Court has jurisdiction under 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the Plaintiff and the Defendants and the amount in controversy is greater than $75,000, exclusive of interests and costs.
3. Plaintiff is a citizen of the State of Connecticut.
4. Defendant Lambda Legal Defense and Education Fund, Inc. ("Lambda Legal") is a non-profit organized under the laws of the State of New York with its principal place of business in New York, and is therefore a citizen of New York for purposes of diversity jurisdiction.

1

5. Defendant Crystal Costello, former Director of People and Culture, is a citizen of Illinois.
6. Defendant Paul Castillo, Plaintiff's former supervisor and the employer's current Deputy Legal Director for Legal Education and Public Engagement, is a citizen of Texas.
7. Defendant Jennifer Pizer, former Chief Legal Officer and current Senior Director of Strategic Initiatives and Special Counsel to the CEO, is a citizen of California.
8. Defendant John Roane, upon information and belief, is not a citizen of Connecticut. Plaintiff reserves the right to amend this allegation if further information becomes available.
9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this District.

### III. PARTIES

Plaintiff

10. The Plaintiff, Kenneshea Allums (she/her), is a resident of Bridgeport, Connecticut.

Defendants

11. Defendant Lambda Legal Defense and Education Fund, Inc. ("Lambda Legal") is a national nonprofit corporation organized under the laws of New York, with its principal place of business located in New York, New York.
12. Defendant Crystal Costello (they/them) was, at all relevant times, the Director of People and Culture at Lambda Legal. They are sued in their individual capacity and, upon information and belief, is a citizen of the State of Illinois.
13. Defendant Paul Castillo (he/him) was, at all relevant times, Plaintiff's direct supervisor. He is sued in his individual capacity and, upon information and belief, is a citizen of the State of Texas.
14. Defendant Jennifer Pizer (she/her) served as Chief Legal Officer of Lambda Legal during the relevant period and now holds the position of Senior Director of Strategic Initiatives and Special Counsel to the CEO. She is sued in her individual capacity and, upon information and belief, is a citizen of the State of California.
15. Defendant John Roane (he/him) was, at all relevant times, the Chief Operating Officer of Lambda Legal. He is sued in his individual capacity. Upon information and belief, he is not a citizen of Connecticut. Plaintiff will amend this allegation as necessary if further facts reveal otherwise.

### IV. STATEMENT OF FACTS

**LEAVE ELIGIBILITY**

16. Plaintiff began her employment with Defendant Lambda Legal on October 30, 2023.
17. Plaintiff suffered from anxiety and requested reasonable accommodations for her anxiety prior to April 2024.
18. Plaintiff was eligible for medical leave under the Connecticut Family Medical Leave Act because she was employed full-time continuously for at least three months prior to her leave, has a serious health condition, and Defendant Lambda Legal employs more than one employee.

19. Defendant Lambda Legal's own investigative report acknowledged Plaintiff's eligibility for Connecticut unpaid family medical leave but failed to notify Plaintiff of this eligibility. Plaintiff only learned of the investigative report's finding after initiating a complaint process through the Connecticut Commission on Human Rights and Opportunities ("CHRO").
20. Defendant Lambda Legal's employee handbook and onboarding materials did not include any information about employee rights or procedures under the Connecticut Family Medical Leave Act, nor was any written notice of these rights ever provided to Plaintiff.

**PLAINTIFF'S EARLY COMPLAINTS OF DISCRIMINATION**
21. Within weeks of beginning employment, Plaintiff reported concerns about racially exclusionary practices in team communications and workflows.
22. On January 5, 2024, Plaintiff and co-chairs of Lambda Unites ("Union"), the labor union that represents Defendant Lambda Legal's employees, met with Defendant Costello and Defendant Roane to discuss a racially discriminatory comment made by the Deputy Director of Litigation. During the meeting, a Union co-chair communicated that Plaintiff was seeking an extension of her relocation date due to stress and health conditions.
23. On January 8, 2024, Plaintiff reported retaliation by the Deputy Director of Litigation for suggesting two white attorneys replace her on a case. Defendant Costello failed to investigate this retaliation complaint and later denied knowing about it until February.
24. On January 9, 2024, the Union co-chair emailed Defendant Costello and Defendant Roane requesting assurances that Plaintiff would be protected from retaliation during the pre-grievance period, which extended until January 31, 2024. Defendant Costello responded with written assurances.
25. On January 12, 2024, the Union co-chair wrote to Defendant Costello and Defendant Roane outlining a plan for follow-up and monitoring of Plaintiff's complaints, Defendant Costello acknowledged but ultimately failed to follow through on.

**DEFENDANT'S FAILURE TO MONITOR OR INVESTIGATE COMPLAINTS**
26. On February 2, 2024, Defendant Costello informed the Union that the investigation into the discriminatory comment was completed but did not share the results with Plaintiff or the Union. Defendant Costello and Defendant Roane privately told the Union that the Deputy Director of Litigation was asked to apologize and that monitoring would take place to prevent retaliation. These steps were not followed.
27. On February 7, 2024, Defendant Castillo granted Plaintiff a partial relocation extension to May 15, stating she needed to move sooner to improve public speaking — a comment tied to earlier racially biased comments about code-switching. Defendant Costello promised to initiate an ADA accommodation process and investigate the supervisor's remarks but failed to do either.

**GRIEVANCES FILED REGARDING BIAS AND RETALIATION**
28. On February 9, 2024, Eric Geist, the Washington-Baltimore News Guild Local Representative, filed a formal grievance on Plaintiff's behalf alleging racial bias, discrimination, harassment, and microaggressions in violation of the Collective Bargaining Agreement ("CBA").

29. The grievance specifically noted that the absence of regular non-discrimination and implicit bias training violated the CBA, which requires Lambda Legal to provide such training.
30. As part of the grievance, Lambda Unites requested that: (1) an independent third-party attorney or firm be hired to investigate the grievance; (2) a formal apology be issued to Plaintiff; and (3) People and Culture implement ongoing monitoring and follow-up.
31. None of those remedial measures were taken by Defendants.

**RETALIATION AND GASLIGHTING BY HR**
32. On February 16, 2024, Plaintiff emailed Defendant Costello and Defendant Roane reporting she believed she was being excluded from work assignments in retaliation for prior protected activity, including complaints about discrimination and retaliation. Her email included a screenshot of a Microsoft Teams conversation.
33. On February 20, 2024, Plaintiff Costello acknowledged the complaint and promised follow-up by the end of the week.
34. On February 21, 2024, several senior employees sent organization-wide emails about ongoing anti-Black discrimination and fears of retaliation.
35. On February 22, 2024, Defendant Costello responded to the February 9, 2024 grievance by denying any connection between staffing decisions and Plaintiff's complaints. However, Defendant Costello acknowledged encouraging the Deputy Director of Litigation to apologize and promised three months of monitoring, including check-ins with Plaintiff.
36. Despite this promise, Defendant Costello never conducted any follow-up check-ins or provided written updates about retaliation monitoring.
37. Defendant Costello also stated they would ask legal department leadership to provide greater transparency regarding case staffing decisions, but no such follow-up was implemented.

**PLAINTIFF'S EMOTIONAL DISTRESS INTENSIFIES**
38. Plaintiff continued to raise concerns about workload reductions and retaliation through February and March 2024.
39. On February 28 and 29, 2024, Plaintiff met with Defendant Costello and Defendant Lambda Legal's former ADA Coordinator, Ren Liu, and representatives from the Union to discuss her ongoing concerns, including retaliation.
40. During the February 28, 2024 meeting, Defendant Costello accused Plaintiff of changing her story. Plaintiff responded that she felt gaslit by Defendant Costello's accusation. Defendant Costello stated they would check their notes to confirm Plaintiff's statements but abruptly left the Microsoft Teams meeting and never followed up about whether Plaintiff changed her story.
41. After Defendant Costello's departure, Liu asked Plaintiff what type of support she needed in that moment. Liu subsequently worked with Plaintiff to implement a temporary reduced work schedule that allowed Plaintiff to work half days on Fridays.
42. Eventually, Defendant Costello denied Plaintiff's request for written clarification and union representation during meetings.
43. On March 11, 2024, Defendant Castillo reassigned Plaintiff from a significant case and Plaintiff once again raised concerns about retaliation and lack of clear staffing criteria.

4

44. Plaintiff emailed Defendant Pizer and other managers regarding unfair workload reductions and retaliation.
45. Plaintiff informed Defendant Costello that their conduct was causing significant emotional distress. Despite this, Defendant Costello failed to take any steps to mitigate the impact or respond to Plaintiff's concerns. The conduct was extreme and outrageous, and it directly caused Plaintiff to suffer from exacerbated anxiety, emotional distress, and related health issues.

**ESCALATION OF RETALIATION AND TERMINATION**
46. On March 13, 2024, Plaintiff submitted a medical certification to support an accommodation request for anxiety. Two days later, Defendant Castillo issued Plaintiff a verbal warning for alleged "gross insubordination."
47. Plaintiff promptly submitted a rebuttal to the March 15, 2024 verbal warning with supporting documentation. Management did not respond, and the rebuttal was never added to Plaintiff's personnel file.
48. Defendant Castillo has acknowledged he received the rebuttal but never reviewed it. He explained that he wished Plaintiff had spent more time on her work.
49. In response to the March 15, 2024 verbal warning, Plaintiff's Union filed a grievance challenging the disciplinary action as retaliatory and lacking just cause under the collective bargaining agreement.
50. Shortly after the grievance was filed, Defendant Costello attempted to summarily dismiss the grievance, asserting it was untimely and refusing to advance it through the grievance procedure.
51. However, under the terms of the collective bargaining agreement, Defendant Costello did not have the authority to unilaterally dismiss grievances filed by the Union.
52. The Union objected to this action and requested a formal meeting with management to address the handling of the grievance and to raise concerns about a broader pattern of retaliatory conduct toward Plaintiff.
53. That meeting occurred in late March 2024 and included Union representatives, members of management, and Defendant Lambda Legal's legal counsel.
54. Despite the Union's efforts, no meaningful resolution was reached, and no written decision was provided on the grievance.
55. Immediately following the meeting, the Union filed a subsequent grievance to preserve Plaintiff's rights under the CBA.
56. On March 15, 2024, Plaintiff filed an anonymous complaint via Defendant Lambda Legal's EthicsPoint system raising concerns about the handling of her prior complaints, her accommodation request, and retaliation by Defendant Costello.
57. Defendant Costello later acknowledged that the complaint was routed to the same HR department Plaintiff had previously complained about.
58. Plaintiff never received any follow-up regarding this complaint, nor was she informed of any investigation or outcome, further exacerbating her concerns about the integrity of Defendant Lambda Legal's reporting systems and her emotional distress.
59. Plaintiff experienced significant emotional distress as a direct result of Defendants' actions, including the March 15, 2024 verbal warning issued shortly after she submitted a medical certification for an accommodation. The proximity of these events, along with

management's refusal to acknowledge or review her rebuttal, reflects a pattern of negligent and reckless disregard for Plaintiff's well-being.

60. Defendant Lambda Legal, Defendant Costello, and Defendant Roane's failure to investigate her complaints, honor promised monitoring, or follow up on multiple grievances contributed to Plaintiff's worsening mental health. These failures were not isolated; they formed part of a broader pattern of neglect and mistreatment that Defendants knew, or reasonably should have known, would cause emotional distress.
61. On March 25, 2024, Plaintiff's accommodation request was effectively paused due to alleged disconnects between People and Culture and the Union.
62. On March 28, 2024, Plaintiff submitted a doctor's note excusing her from work until April 5, 2024.
63. On April 3, 2024, Plaintiff sent an email to Defendant Costello stating that she was stressed and overwhelmed and a lack of follow up or direction regarding the issues she raised were exacerbating the toll People and Culture's investigation was taking on her mental health.
64. Despite this direct notice, Defendants failed to take any corrective or mitigating steps. This disregard for Plaintiff's explicit emotional distress was part of a continuing pattern of negligent supervision and indifferent HR conduct.
65. On April 4, 2024, Defendant Costello issued an advance notice of disciplinary action.
66. On April 8, 2024, Plaintiff was suspended with pay for two weeks.
67. On April 9, 2024, Plaintiff's Union representative submitted a request for job-protected medical leave.
68. On April 10, 2024, Defendant claimed Plaintiff was not eligible for FMLA leave.
69. Plaintiff followed up on her eligibility via email and even provided Defendant Costello with a link to the state website confirming the eligibility criteria. Management never responded.
70. On April 11, 2024, Plaintiff submitted a formal complaint to Defendant Pizer, Defendant Roane, and Kevin Jennings, Chief Executive Officer ("CEO"), alleging that Defendant Costello had misrepresented her rights under the Connecticut Family Medical Leave Act, among other misconduct.
71. After her termination, Plaintiff discovered that People and Culture conducted an internal investigation and concluded that most of Plaintiff's claims were unsubstantiated, with the exception of the allegation concerning Defendant Costello's misrepresentation of Plaintiff's FMLA rights.
72. The investigation report stated that the findings on this issue were inconclusive based on limited data to confirm or deny intent.
73. However, the report acknowledged that Plaintiff was eligible for unpaid medical leave under the Connecticut Family Medical Leave Act—an important fact that Defendant Lambda Legal, Defendant Roane, and Defendant Costello failed to communicate to her.
74. On April 12, 2024, Plaintiff submitted a letter from her primary care physician requesting medical leave. Defendants Lambda Legal, Roane, and Costello did not acknowledge receipt of the letter, nor did it provide any response.
75. On April 19, 2024, Plaintiff was terminated for "gross insubordination" and "violating workplace safety policy."

6

76. Following Plaintiff's termination, the Union issued an email to all members, acknowledging the termination and detailing the Union's filing of a grievance on Plaintiff's behalf citing contract violations including lack of notice and lack of just cause.
77. Plaintiff never received a copy of the applicable Collective Bargaining Agreement ("CBA"); the version provided at hire did not define "gross insubordination" or establish a progressive discipline process.
78. Defendant's Schedule A, filed with the CHRO, confirmed the termination decision was recommended by Defendant Pizer, Defendant Costello, Defendant Roane, Defendant Castillo, and the CEO.
79. Plaintiff had previously emailed her final complaint against Defendant Costello to Defendant Roane, Defendant Pizer, and the CEO, all of whom later endorsed her termination.
80. Shortly after Plaintiff's termination, Defendant Costello resigned but testified during the CHRO process that they continued to consult for Defendant.
81. Defendants failed to conduct a fair investigation into the alleged "workplace safety violations" and "gross insubordination" used to justify Plaintiff's termination.
82. Defendant Costello did not interview Plaintiff or give her an opportunity to respond to the allegations.
83. Defendant Castillo later admitted he never reviewed Plaintiff's written rebuttal.
84. Defendant Pizer and Defendant Roane also endorsed the termination without conducting any independent review.
85. Defendants never produced any concrete evidence to support the alleged misconduct, including during the CHRO proceedings.
86. The failure of leadership to meaningfully investigate, despite their awareness of Plaintiff's protected activity, supports an inference of retaliation and pretext.
87. On April 23, 2024, Plaintiff's union filed a grievance challenging her termination, citing several contract violations including lack of notification and absence of just cause.
88. A witness cited in the employer's internal report later stated that she was unaware her statements were used to justify Plaintiff's termination and that she found Plaintiff professional, respectful and would work with her again.
89. This false reliance on unconfirmed witness testimony, and the endorsement of the termination by senior leadership despite receiving Plaintiff's complaints against Defendant Costello, demonstrate reckless and outrageous disregard for Plaintiff's rights and well-being.
90. These actions — including Defendant's failure to communicate medical leave rights, refusal to follow its own complaint procedures, repeated denials of support, and disregard for Plaintiff's worsening health — rise to the level of extreme and outrageous conduct. Defendant's continued negligence, including its failure to supervise Defendant Costello and Defendant Castillo or correct known deficiencies, foreseeably caused Plaintiff severe emotional distress.
91. On January 7, 2025, Plaintiff filed a complaint with the Connecticut Department of Labor ("CT DOL") outside the standard limitations period.
92. Plaintiff asserts good cause for the delay based on incapacitating health issues, loss of insurance, depression, and Defendant's misleading conduct.
93. On January 13, 2025, the CT DOL issued a Release of Jurisdiction.

**V.     CAUSES OF ACTION**

7

**Count I: Interference with Rights under the Connecticut Family and Medical Leave Act (CFMLA)**

**Conn. Gen. Stat. §§ 31-51kk, 31-51qq**

94. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.
95. At all relevant times, Plaintiff was an eligible employee under the Connecticut Family and Medical Leave Act, having been employed full-time by Defendant Lambda Legal for at least three consecutive months prior to her requested medical leave and suffering from a serious health condition.
96. Defendant Lambda Legal is a covered employer under the CFMLA, employing at least one employee in Connecticut.
97. Plaintiff's serious health condition rendered her eligible for protected leave under the CFMLA.
98. Defendant Lambda Legal interfered with Plaintiff's rights under the CFMLA by: failing to notify Plaintiff of her eligibility for CFMLA leave; denying her request for job-protected medical leave based on inaccurate or misleading information about eligibility; failing to respond to her medical certification submitted by her primary care provider.
99. Defendant Lambda Legal's own internal investigation later confirmed Plaintiff was in fact eligible for Connecticut medical leave, and it failed to communicate this to her.

**Count II: Retaliation for Exercising Rights under the CFMLA**
**Conn. Gen. Stat. §§ 31-51kk, 31-51qq**

100. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.
101. Plaintiff engaged in protected activity under the CFMLA by: requesting medical leave for a serious health condition; submitting a medical certification from her doctor; challenging Defendant Lambda Legal's denial of her CFMLA rights and seeking clarification, and Defendant ultimately terminated her employment.
102. Defendant Lambda Legal's adverse actions were taken in close temporal proximity to Plaintiff's exercise of her rights under the CFMLA.
103. Defendant Lambda Legal's stated reasons for the disciplinary action and termination were pretextual and were motivated by Plaintiff's request for protected medical leave.

**Count III: Intentional Infliction of Emotional Distress**
**(Against Defendant Costello)**

104. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.
105. 
106. Defendants Crystal Costello engaged in extreme and outrageous conduct intended to cause Plaintiff severe emotional distress, or acted with reckless disregard of the probability of causing such distress.
107. This conduct included, but was not limited to: Gaslighting Plaintiff and falsely accusing her of changing her story; ignoring multiple complaints of discrimination and retaliation; denying Plaintiff her rights under the CFMLA; issuing false disciplinary

actions shortly after accommodation requests; failing to properly investigate retaliation complaints and allowing managers who were subjects of those complaints to participate in discipline; terminating Plaintiff while she was suffering from a serious health condition.
108. The conduct of individual Defendant Costello was willful, malicious, and intended to harm Plaintiff emotionally.
109. Plaintiff suffered severe emotional distress as a direct and proximate result of Defendants' conduct, including anxiety, depression, trauma-related symptoms, and physical illness.

**Count IV: Negligent Infliction of Emotional Distress**
**(Against Defendant Costello, Defendant Castillo, Defendant Roane, and Defendant Pizer)**

110. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.
111. Defendant Lambda Legal owed Plaintiff a duty to provide a safe and lawful working environment and to properly supervise its employees.
112.
113. Defendants Castillo, Costello, Pizer and Roane as agents of Defendant Lambda Legal, owed Plaintiff a duty to refrain from conduct that would foreseeably cause emotional distress.
114.
115. Defendants breached their duties by creating a retaliatory work environment, mishandling accommodation requests, failing to investigate complaints, misrepresenting Plaintiff's legal rights, and taking adverse employment actions in disregard of Plaintiff's health conditions.
116. As a direct and proximate result of Defendants' negligence, Plaintiff suffered serious emotional distress requiring medical care.

**Count V: Negligent Supervision**
**(Against Defendant Lambda Legal Defense and Education Fund, Inc.)**

117. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.
118. Defendant Lambda Legal had a duty to supervise its employees, including Defendant Costello, Director, supervisors, and other managerial staff, to prevent foreseeable harm to employees like Plaintiff.
119. Defendant Lambda Legal knew or should have known that Defendant Costello and other involved managers were unfit to properly investigate employee complaints, handle sensitive accommodation requests, or engage in lawful employee discipline.
120. Plaintiff's repeated warnings and formal complaints, Defendant Lambda Legal failed to take reasonable steps to monitor, investigate, or restrain its unfit employees from engaging in conduct that violated workplace policies and state law.
121. As a direct result of this failure to supervise, Plaintiff suffered harm, including emotional distress, reputational damage, and unlawful termination.

## VI. DAMAGES

As a direct and proximate result of the Defendants' actions, the Plaintiff has suffered and continues to suffer damages, including but not limited to:
   a. Lost wages and benefits including back pay, front pay, and lost employment benefits such as health insurance, retirement contributions, and accrued leave.
   b. Emotional distress and mental anguish including anxiety, depression, humiliation, fear, and stress.
   c. Dignitary harm including damage to personal and professional reputation, humiliation, degradation, and harm to Plaintiff's sense of self-worth and professional identity.
   d. Damage to career prospects and reputation including harm to future employment opportunities and loss of standing in the legal community.
   e. Punitive damages where applicable, for willful, wanton, or reckless misconduct by Defendants, particularly the individual defendants.
   f. Other economic and non-economic damages as will be proven at trial.

## VII. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants and award the following relief:

   A. Compensatory damages in an amount exceeding $75,000, including back pay, front pay,
   B. and the value of lost benefits;
   C. Damages for emotional distress, pain and suffering, dignitary harm and other non-economic harms;
   D. Equitable relief
   E. Punitive Damages against the individual Defendants, to the extent permitted by law, for willful or reckless misconduct;
   F. Prejudgment and post-judgment interest as allowed by law;
   G. Costs and expenses of litigation;
   H. Any further relief as the Court deems just and proper.

## VIII. DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial on all issues raised in this complaint.

Respectfully submitted,

/s/ Kenneshea Allums

Kenneshea Allums
1188 Main Street
Apt. 208 Bridgeport, CT 06604
318-518-4387
Kballums@gmail.com
*Pro Se Plaintiff*

# CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day September I filed the foregoing Amended Complaint with the Clerk of the Court using the Court's electronic filing system.

Service of this Amended Complaint will be made as follows:

Defendant Lambda Legal Defense and Education Fund, Inc. will be served electronically via the Court's CM/ECF system.

The individual defendants named in the Amended Complaint will be served pursuant to Rule 4 of the Federal Rules of Civil Procedure. Once service is completed, I will file proof of service with the Court in accordance with Rule 4(l).

/s/ Kenneshea Allums
Kenneshea Allums, Pro Se
1188 Main Street
Apt. 208
Bridgeport, CT 06604
Kballums@gmail.com
318-518-4387

## Dismissal of CTFMLA Complaint: Kenneshea Allums v. Lambda Legal
1 message

**FMLA No Reply** <dol.ct-fmla-complaints-notifications@ct.gov>  Mon, Jan 13, 2025 at 10:58 AM
To: "kballums@gmail.com" <kballums@gmail.com>

Legal Division
200 Folly Brook Blvd.
Wethersfield, CT 06109

January 13, 2025

Kenneshea Allums
kballums@gmail.com

Re:   Kenneshea Allums v. Lambda Legal
        MLC 25-000000486

I am writing to inform you of our determination in the above-referenced matter. You filed a Connecticut Family and Medical Leave Act ("CTFMLA") complaint against Lambda Legal, on January 7, 2025. In your complaint, you contend that Lambda Legal interfered with, and retaliated against you for exercising your CTFMLA rights.

Specifically, this complaint was filed beyond the 180-day deadline to file a CTFMLA complaint. Good cause did not exist for the late filing. Consequently, this agency does not have jurisdiction to consider your complaint, and your case is dismissed. Conn. Gen. Stat. Sec. 31-51pp(d)(1).

**Pursuant to Connecticut General Statutes Section 31-51pp(d)(2), this agency releases jurisdiction over your complaint. You have the right to bring a civil action in the Superior Court, provided such action is brought no later than ninety (90) calendar days after the date of this decision and release of jurisdiction.**

Sincerely,

Heidi Lane
Legal Division Director

**Attention filers and respondents of CTFMLA complaints:** If you add or remove an attorney or representative, please notify us immediately at **dol.ctfmla@ct.gov** or (860) 263-6400 to ensure timely receipt of all communications, which may have time-sensitive deadlines.

*For Assistance in Español, Français, Deutsch, Italiano, Polski, Português, Russian, Tagalog, Chinese, Korean, Vietnamese*