UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KENNESHEA ALLUMS, | : | |
| | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | No. 3:25-cv-577-VDO |
| | : | |
| LAMBDA LEGAL DEFENSE & | : | |
| EDUCATION FUND, INC., PAUL | : | |
| CASTILLO, CRYSTAL COSTELLO, | : | |
| and JENNIFER PIZER, | : | |
| | : | |
| *Defendants*. | : | |

## THIRD RULING ON DISCOVERY DISPUTES

This case was referred to the undersigned to manage all discovery.  ECF 67.  The following rulings, as explained in more detail during the in-person discovery conference May 21, 2026, address each party's notice of ongoing disputes.  ECF 117, 119.  Some of the deadlines discussed during the hearing have been adjusted herein to facilitate tracking and compliance—the deadlines herein are controlling.

### A.  Disputes identified in Plaintiff's Notice (ECF 119)

**Confidentiality designations.**  Plaintiff challenges the confidentiality designations on the Bates numbered documents listed on ECF 119 at 4.  By **May 26, 2026**, Defendants' counsel shall submit those documents to Judge Vatti's chambers for *in camera* review.

**Missing attachments**.  *See* "Discovery Gaps" section below.

**Verification page for supplemental interrogatory responses**.  Lambda Legal has provided a signed verification for its supplemental interrogatory responses dated February 6, 2026. ECF 119-3.  The dispute is moot.

**Adequacy of Defendants' meet and confer efforts**. This is not a pending dispute that requires Court intervention.

**FMLA comparator (Interrogatory 2; *see* ECF 119-1)**.  The Court previously defined the scope of relevant comparators for Plaintiff's CTFMLA claim (ECF 82 at 1-2) and then ordered Lambda to disclose whether the sole identified comparator engaged in relevant protected activity in the year before the leave request (ECF 101 at 5).  By **June 15, 2026**, Lambda shall provide a supplemental sworn statement identifying (a) the date of the comparator's medical leave request and (b) the requested duration.  Additionally, the statement shall generically describe (c) documentation sought by Lambda to review the request, (d) documentation actually provided to Lambda, and (d) how Lambda processed the request, including who reviewed the request, steps taken to review it and whether it was granted.  Plaintiff's pending request for production of the documentation the comparator provided to Lambda is DENIED without prejudice.

**Policies and procedures (Interrogatories 5, 10; *see* ECF 119-1)**.  Lambda has adequately answered by identifying responsive policies/procedures documents by Bates number and citing to specific sections of those documents, which it then produced.  *See* Fed. R. Civ. P. 33(d).  To the extent that Plaintiff wishes to learn whether particular decisionmakers considered or did not consider specific policies in connection with her case, she can explore that question at depositions.

**Disciplinary comparator (Interrogatory 8; *see* ECF 119-1)**.  By **June 15, 2026**, Lambda shall supplement its answer to state whether the disciplinary comparator engaged in protected activity in the year prior to termination in May 2025.  The answer is otherwise adequate.

**Grievance procedure; Plaintiff's grievances (Interrogatory 11-12; *see* ECF 119-1)**. Lambda's answers are adequate. *See* Fed. R. Civ. P. 33(d). If ongoing discovery, including deposition testimony, reveals that responsive information is likely missing, Plaintiff may renew the request.

**Communications with unions (Interrogatory 13; *see* ECF 119-1)**. Lambda's search efforts, as described by counsel, yielded approximately 250 documents and appear to have been reasonably diligent. Plaintiff may propose new search terms to Lambda, but the Court will not intervene in Lambda's search design absent a showing that it is "manifestly unreasonable" or "the resulting production is deficient." *Mortg. Resol. Servicing, LLC v. JPMorgan Chase Bank, N.A.*, No. 15-cv-293 (LTS)(JCF), 2017 WL 2305398, at *2 (S.D.N.Y. May 18, 2017). If ongoing discovery, including deposition testimony, reveals that responsive information—such as notes/memos documenting phone or other in-person communications—is likely missing, Plaintiff may renew the request.

**Disciplinary issues (Interrogatory 16; *see* ECF 119-1)**. Lambda's answer regarding gross insubordination is sufficient. As for violation of workplace safety issues, by **June 15, 2026**, Lambda shall supplement its answer to describe each workplace safety allegation/complaint and who raised it. Lambda may point to documents if appropriate but must use a narrative answer for any information not captured in documents. Lambda has incentive to be thorough insofar as any instance or complainant not disclosed may be precluded from use in Lambda's defense at trial. If ongoing discovery, including deposition testimony, reveals that responsive information is likely missing, Plaintiff may renew the request.

**Accommodations requested (RFA 1; *see* ECF 123 at 61-63)**.  The first paragraph of Lambda's supplemental response dated April 30, 2026, sufficiently answers the request as it was phrased.  Plaintiff may serve additional requests for admission if appropriate.

**Personnel files of comparators (RFP 8; *see* ECF 119-5 at 8)**.  By **June 15, 2026**, Defendants' counsel shall submit the personnel files of both the FMLA comparator and the disciplinary comparator to Judge Vatti's chambers for *in camera* review.

**Discovery Gaps alleged in ECF 119 at 5-6 (missing attachments) and 12-15**.  After Lambda's initial production, Plaintiff identified emails that were missing attachments, which Lambda then supplemented.  Lambda now believes it has produced all attachments referenced in responsive emails.  Plaintiff is not convinced.  She requests that Lambda be ordered to review its production again for completeness, rather than waiting for Plaintiff to identify deficiencies.  She objects to having to review the production herself on the ground that, as a *pro se* party, it is unduly burdensome.

However, I conclude that it is not unduly burdensome for Plaintiff to review the documents produced to her in discovery, particularly given that she is a practicing attorney.  Every litigant in every case experiences time and cost burdens.  Although Plaintiff's burden might be incrementally greater than Defendants' insofar as she is working on this case in her personal time, she received many of the documents months ago, *see*, *e.g.*, Defs.' Supp. RFA Resp. dated 3/3/26, ECF 119-5, and she will have to review the productions at some point to prepare for trial.  Nonetheless, the Court will afford her additional time to conduct her review.  By **June 26, 2026**, Plaintiff may provide a list to Defendants' counsel identifying documents by Bates number that suggest the existence of additional responsive information/attachments that Lambda has not disclosed or produced.  By **July 15, 2026**, the parties shall conduct a meet and

confer regarding the alleged gaps.  By **July 31, 2026**, Lambda shall produce any missing documents or provide a sworn response stating, as to each document on Plaintiff's list, that either the putative missing information does not exist or could not be found despite a diligent search.

**B.**  **Disputes identified in Defendants' Notice (ECF 117)**

**Plaintiff's medical records**. On February 11, 2026, the Court ordered Plaintiff to comply with Defendants' requests for medical records in RFP 1, 2, and 5.  ECF 101 at 6-7.  The Order noted Plaintiff's allegation of a "serious health condition" in the CTFMLA count.  *See* 2d. Am. Compl., ECF 77 ¶ 200 ("a serious health condition that rendered her eligible for protected medical leave").  This allegation is a critical element of her claim of eligibility for CTFMLA leave.  The pleading describes this condition as "worsening anxiety" and "severe stress, sleep disruption and deterioration of her mental health."  ECF 77, ¶¶ 154, 159.  Related allegations also appear in the Intentional Infliction of Emotional Distress count, which alleges that Defendants "advanc[ed] disciplinary action while Plaintiff was on physician-recommended medical leave and experiencing acute mental-health distress," "Plaintiff suffered severe emotional distress, including anxiety, depression, sleep disruption, physical illness, and exacerbation of pre-existing medical conditions," and "Plaintiff's emotional distress was severe and of a nature that no reasonable person could be expected to endure."  *Id.* ¶¶ 221(c), 223, 224. Further allegations appear in the Negligent Infliction of Emotional Distress count, including that "Plaintiff suffered serious emotional distress resulting in medical treatment, physical symptoms, and lasting psychological harm."  *Id.* ¶ 228(g).  Additionally, the prayer for relief at alleges "Emotional distress and mental anguish including anxiety, depression, humiliation, fear, stress, trauma-related symptoms, sleep disturbance, and physical manifestations of emotional distress." *Id.* ¶ VI(c).

Because Plaintiff's medical records are directly relevant to the liability issues she raised, the February Order required her to produce them and set a compliance date of March 3, 2026. ECF 101 at 6–8. The Order also noted that Plaintiff's treatment records for any mental health conditions are relevant to her claim for emotional distress damages. *Id.* at 7. Plaintiff neither sought any clarification of the February Order nor filed any objection.

Nonetheless, Plaintiff has rebuffed Defendants' attempts to obtain compliance with the Order based on a new theory that the records are irrelevant because she is claiming only garden variety emotional distress. This objection is untimely in two respects: it was not asserted in Plaintiff's written response to the Requests for Production (ECF 71-2), and she did not file an objection to the February Order within fourteen days as permitted under Rule 72(a). Nor would the objection have any merit even if timely raised. In certain circumstances, plaintiffs seeking emotional distress damages may avoid disclosing medical records by limiting their claims to garden variety emotional distress. *See*, *e.g.*, *Lockett v. Target Corp.*, No. 3:20-cv-191(JAM), 2021 WL 6498200, at *2 (D. Conn. May 19, 2021) (Richardson, M.J.) ("Since plaintiff claims garden variety emotional distress damages, her medical history is not relevant."); *cf. In re Sims*, 534 F.3d 117, 134 (2d Cir. 2008) ("a plaintiff may withdraw or formally abandon all claims for emotional distress in order to avoid forfeiting his psychotherapist-patient privilege"). But this is not such a circumstance given both the nature of the claims and the substance of the allegations cited above. "A plaintiff making a claim for intentional infliction of emotional distress must prove more than 'garden variety' emotional distress. In fact, to sustain these claims, plaintiffs must prove that they suffered severe emotional distress. By making claims for intentional infliction of emotional distress, plaintiffs have clearly placed their mental condition, as well as the severity of their mental conditions, at issue." *Spector v. Bd. of Trs. of Cmty.-Tech. Colleges*,

No. 3:06CV129 (JCH), 2007 WL 9753111, at *3 (D. Conn. June 28, 2007) (Fitzsimmons, M.J.) (noting the same for negligent infliction claim).

Based on the Court's colloquy with Plaintiff, it is clear she has not contacted her medical providers to request her complete treatment records for the relevant period.  Insofar as Plaintiff continues to protest that the term "treatment records" is vague, the Court rejects any notion that Plaintiff, a member of the bars of Connecticut, New York and Texas, does not understand the plain meaning of that term.  Her providers certainly will understand it.

In short, Plaintiff's noncompliance with the medical records provisions of the Court's February Order is wholly unjustified.  Defendants have not sought Rule 37 sanctions at this time, and the Court will afford Plaintiff an opportunity to cure the noncompliance as follows.  Plaintiff shall complete HIPAA records authorizations for each responsive medical or mental health provider for the responsive period. (To determine the responsive providers and period, Plaintiff should review the Court's February Order, ECF 101 at pages 6-7, and the underlying RFPs 1, 2, and 5.)  By **June 15, 2026**, she may either provide the HIPAA authorizations to Defendants' counsel to obtain the records from her providers at Defendants' expense, or she may request the records directly in writing or in person from her providers at her own expense.  By **July 15, 2026**, if she has chosen to obtain the records directly, she shall produce them to Defendants. Any motion for extension of this production deadline must contain a showing of good cause, including describing diligent efforts to expedite production such as by calling the provider's office to follow up on written requests or going there in person to seek the records.  (Plaintiff's request to stay these deadlines so she can file an objection is DENIED, insofar as the fourteen-day window to object to the February Order has expired.  *See* Fed. R. Civ. P. 72(a).)

Lastly, there was insufficient time at the hearing to address the remaining items in Defendants' Notice, so the Court rules based on the papers as follows.

**Identification of responsive documents**.  Each party asserts that the other's production is not adequately indexed.  The parties should address this at their next meet and confer.  While they should be cognizant of Rule 34(b)(2)(E)(i), the Court cautions them to consider the true needs of the case and not to elevate form over substance.

**Allums 848**.  By **June 26, 2026**, Plaintiff shall serve a courtesy copy of Allums 848 on Defendants' counsel.

**Union privilege; Privilege log (ECF 123 at 41-51)**.  The February Order overruled Plaintiffs' objections that cited a putative union relations privilege.  ECF 101 at 6-7.  If Plaintiff has withheld any document solely based on that objection, she shall produce it by **June 26, 2026**. Also by **June 26, 2026**, Plaintiff shall serve an updated privilege log with an additional column identifying by Bates number the documents she redacted or withheld and another column identifying the recipients of each communication.

## C. <u>Conclusion</u>

This is not a recommended ruling.  This is an order regarding case management which is reviewable pursuant to the "clearly erroneous" statutory standard of review.  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2.  As such, it is an order of the Court unless reversed or modified by the District Judge upon motion timely made.

SO ORDERED, this 22nd day of May, 2026, at Bridgeport, Connecticut.

*/s/ S. Dave Vatti*
S. DAVE VATTI
United States Magistrate Judge

8